to the next case which is U.S. v. Vannortwick. I hope I did not mess that up. Vannortwick. Vannortwick. Vannortwick it looks like. Which is 227034. Good morning your honors. Josh Lee again from the Federal Public Defender's Office for the appellant Kyle Vannortwick. Mr. Vannortwick claims that the district court plainly erred by tallying a criminal history point for his prior Oklahoma conviction for resisting an officer. Counting that conviction was plainly erroneous because convictions that are similar to resisting arrest don't score criminal history points and it's clear and obvious that resisting an officer is at least a resisting arrest. Now. So we're talking about one point. Exactly. Okay. Right. And that's after a 26% reduction of what the sentence could have been. That's exactly right and my position and I would like to focus this morning on why it was prejudicial. My position is that counting the resisting an officer conviction there's a reasonable likelihood that that changed Mr. Vannortwick's criminal history category and changed his guideline range. So you said it would not have changed his category. No. There's a reasonable likelihood that it would have changed his category and I'll tell you why. Criminal history points provide for a default criminal history category. But before determining the criminal history category and the guidelines range, 4A1.3 says that the district court must look at whether the default criminal history category actually accurately represents the seriousness of the defendant's criminal history. And in this case, if the resisting an officer conviction had not counted, I think it would have become obvious to everybody that something had gone awry with the criminal history calculation and that criminal history category 3 overstated things. Well, aren't you speculating would have, could have, might have? This is a plain error review. So that's right. The test is inherently counterfactual. You ask, is there a reasonable likelihood that things would have turned out differently but for the error? And there is a reasonable likelihood that things would have turned out differently. That's because as I said, it would have been obvious, I think, to everybody that something was wrong with criminal history category 3. And here's why. But wasn't there already an argument made by defense counsel before the district court that the criminal history was overstated? Two responses to that. First, there was not an argument to reduce the guideline range under 4A1.3. Second, any argument about the criminal history category was not a good argument if this resisting an officer conviction counts. So if the resisting an officer conviction counts, he's in criminal history category 3 based on two separately countable misdemeanor offenses and two status points. That happens all the time. That's not unusual. If the resisting an officer conviction doesn't count, then what he has is four criminal history points that derive from one misdemeanor prior for possessing marijuana and drug paraphernalia. And furthermore, not only is he in criminal history category 3 based on points that derive from this one minor misdemeanor, but the fourth criminal history point that would have kicked him into category 3 is pretty arbitrary. And here's why. The guidelines say if you commit the instant offense while you're on probation, you're And the only reason is that the state court decided to go ahead and revoke his probation and impose a sentence for the probation revocation before his federal case was resolved. Now, I think in my experience and in Judge White's experience, having read a lot of PSRs, that's very unusual. It's not typical for you to catch a federal charge and then be taken back to state court to deal with a misdemeanor probation violation. Could the defense counsel have made that argument without the adjustment on the criminal history point? No, because it wouldn't have been dispositive. So if the resisting an officer conviction counts, then he has four criminal history points, and he's in category 3 even without this arbitrary criminal history point. So what would have happened is he has one point. So let's say we take the arbitrary point off the table. If the resisting an officer conviction counts, he has one point for the resisting an officer conviction, one point for the marijuana possession conviction, and two status points. Even without the arbitrary point, he's still in category 3. It doesn't appear that there's something wrong with criminal history category 3 in that situation. Without the resisting an officer conviction, it does seem like that something's wrong. Would have been apparent to defense counsel, would have been apparent to the district court. And let me just say, Judge Kelly, in your response to this, in your question about this being speculative, it's not unusual for the reasonable likelihood standard to turn on the notion that defense counsel might have acted differently. Well, in plain error, you've got to come up with something. And you've come up with just a group of speculative wishes. I don't think it's speculative. So the plain error standard is the reasonable likelihood standard, which is the same standard as Brady, right? The Brady failure to disclose evidence. And the way that Brady works is if the prosecution makes an error in failing to disclose evidence, we say, well, defense counsel, if they'd gotten this evidence, they might have done something different with the defense. They never knew it in the first place. Well, in this case, they knew that he had X number of points, 3 history category was not an issue. Give back the one point. He still has 4. Yeah, but what they didn't know is this resisting an officer conviction did not count. And if everybody understood the resisting an officer conviction did not count, defense counsel would have acted differently. The judge would have acted differently. There's a reasonable likelihood that the guidelines range would have come out differently. So let me just say this. If you posit that the district court would have applied 4A1.3, which the district court was required to consider under 1B1, if you posit the district court would have applied that, then the guidelines range is about 2 and 1⁄2 years lower. If you give a 26% downward variance based on all of the other mitigation that defense counsel presented, you would have had a sentence 2 years lower than what was imposed. So if we get to a reasonable likelihood that the guidelines range would have been different, we have a reasonable likelihood that the sentence would have been different. I think, Judge Bacharach, your opinion in URIC is pretty instructive about this. And I think it may also answer some of Judge Kelly's concerns. So in URIC, the district court was considering whether to give the defendant the downward adjustment for a minor role in the offense. The district court applied the wrong standard and denied that. But nevertheless, the district court said, under 3553A, your role is pretty minor, so I'm going to vary downward. But, Judge Bacharach, your opinion holds that the fact that the judge varied downward suggests there's a reasonable likelihood that if it had applied the right test, it would have given him a downward adjustment. That would have changed the guideline range. And a reasonable likelihood of an effect on the guidelines range equates to a reasonable likelihood that the outcome would have been different. The challenge for me seems to be that, like in Wendy URIC's case, where you have a mitigating role adjustment, it's inherently going to result in downward pressure on the guideline range. So back to Judge Briscoe's question, but the defendant did, even though there were five criminal history points, make exactly the same argument, just not as eloquently as you, that this was, in fact, he even uses the same term you do, a perfect storm calculation. And so, for example, this argument that it was an aberration, it was not a coincidence, but it was unusual that a judge would revoke the probation while the defendant is waiting federal criminal charges. The defendant could have made that same argument to substantiate what he actually did make. And so your argument, back to Judge, what's your name? Kelly. Kelly. Kelly's question is, so you have to assume that it's going to be a likelihood of a change if you're on the cusp, as opposed to with five. Well, how do we know why? I mean, you can go down two criminal history points. I think I'll give you an analogy. If the defendant is facing a murder trial and argues, I wasn't there, I'm testifying that I wasn't in the city when it happened. But the prosecution suppresses an alibi witness who could have testified that the defendant wasn't there. That makes a difference. It doesn't matter that he generally took the position that I would have caused him to have a much better argument. And that's exactly what we have here. Again, I want to say the defense's argument for a criminal history category three overstates things was bad as things stood. It would have been really good if this error is corrected. And again, here's why. The way things stood, he's got two separately countable misdemeanor offenses that get two points. And then he's got two status points. That happens all the time. There's not a good argument for going downward from criminal history category three. But if you take away the resisting an officer point, there's a much better case for going downward pursuant to 4A1.3, a really strong case. And the fact that as things stood, the defense lawyer did not have a good argument is probably why he didn't say anything about the criminal history being overstated at the sentencing hearing. Because that was not his best case. It would have been his best case, but for this error. Did the district court say at sentencing that this is the sentence that I would give you no matter what, no matter how the laws changed or the skies part or whatever the final blessing was? Yes. I don't think that's a problem for Mr. Van Wortwyk. I do think it's something that this court should address because I don't think that it's allowable in terms of the prejudice analysis. So what the district court said is notwithstanding any of the facts of this case, even if the facts were totally different, I would still give exactly the same sentence. The district judge says exactly that script word for word in every case. You see, I remember when you were standing here just a few minutes ago and you told us how the district court said verbally at sentencing. And now you're saying, nah, that's nothing. Well, so there's a difference. And the difference is... I thought you'd say that. Yes. The difference is this, for one thing, this court's decision in Dysart, where the court has said we're not going to allow district courts to say no errors that I made had any effect on the Furthermore, if you pay really close attention to what the district court said orally, going back to what I said about an hour ago, if you pay really close attention to it, it doesn't even apply to this issue. So the district judge said, if all of the facts had been different, I would impose the same sentence. But he didn't say anything about the guidelines. Well, and it's helpful, though, here, as far as the prosecution's concerned, that the district court did vary, vary downward, right? I don't think it does. I think if you look... Well, I mean, I thought your argument in your briefing, at least, was that, yeah, he just reads the script and it doesn't really mean anything to anybody. It's just, you know, another day in court and it could be any defendant doing anything. We're just going to get the same message. But here, that's not really true, is it? Because you have an actual consideration of this defendant under these facts and he varies downward. So I have not claimed that the district court didn't thoughtfully consider this sentence and give individualized attention to the sentence. What I have said is that after the district judge imposed the sentence in an individualized manner, he read this non-individualized harmless error script in an obvious effort to insulate the decision from review. And that is not permitted under Guy Swine, no matter what the sentence is. And if there are no further questions, I'll reserve the remainder of my time. May it please the court, Linda Epperle again from the United States Attorney's Office here representing the United States. This is a matter in which the court was presented with a number of very serious considerations, not all of which the court sees every day. This is a situation where a defendant murdered his twin. At the time of sentencing, you had various family members that came forward describing how it had torn this family apart, how they wanted leniency to some degree for the defendant so that he might have a possibility for a life at some point. But they were torn also with needing to feel some kind of punishment for what happened to the victim, and feeling that the court needed to craft a sentence that would reflect all of those things, including the fact that they all felt the defendant needed some time in prison in order to try to deal with all of this that had happened. The defendant had a tough childhood. The defendant, after committing this murder and stabbing his twin brother, actually called for help. He tried to assist. It was just a very unusual case that the court was presented with. And whether or not the guidelines included one point for resisting an officer, number one, didn't change the guidelines. But number two was not what drove the sentence or the variance that was issued in this case. This court said, or the court said that in addition to the defendant's aberrant behavior, so the court was recognizing that this was out of the norm for this defendant, along with rendering aid to his victim, his minimal criminal history. So again, the court's not relying on some large criminal history in crafting a sentence. The lengthy pretrial detention, and then all of these variants, a variance that decreased the time that this defendant will spend in jail by some 76 months. As the court indicated, particularly Judge Kelly, that what is argued here today by the defense is an inference on an inference on an inference on inference. What we know is that even if there was some sort of error, that resulted in one point that did not change the guideline whatsoever. Do you confess that error? I'm not authorized to confess that error. However, I will not argue it here today for this reason, Your Honor. As counsel indicated in its recent filing with this court, there have been amendments now to the sentencing guidelines. And as of November of 2013, no, November of 2023, those new guidelines mean that this would not count anyway. So even though this court had not specifically spoken to the issue presented here and whether or not resisting an officer in Oklahoma should count as a point or not, this court really need not face that because after November, it won't count at all under the new guidelines. Well, it matters to this defendant. It matters to this defendant, but not to the degree argued by opposing counsel, because it didn't change the guidelines, because this sentence was not as some of the sentences looking at sentencing errors. This is not a case where this error was deeply embedded in the court's sentence. The court, what drove this sentence was not whether or not there was that one criminal history point. What drove this sentence was trying to craft a variance that would properly satisfy all the sentencing factors. And in order to show that there should be relief here, the defendant needs to show that there was error, that it was plain, although this court had not previously addressed the issue, that it affected substantive rights, and that the error had a serious effect on the integrity or public reputation of the judicial proceeding. Again, this is a case that is unusual in that we have the family involved on both sides. We have the family asking for a specific sentence that the court could script that would somehow meet all these needs. In this case- Can I ask you a question? Yes, Your Honor. If, and I know you specialize in appellate work, but hypothetically, let's say you're the prosecutor at the sentencing, and the defendant and the judge doesn't make this argued alleged error on one criminal history point, and there's four criminal history points, the defendant is right at the cusp of criminal history category number two, and the defense counsel stands up and makes exactly the same argument that they did on page nine of the motion for variance, but makes the argument that Mr. Leek made just a moment ago, and in his appellate brief, that is, that not only am I at the cusp of criminal history category number two, but all of these, all, not just two misdemeanors, but all of these criminal history points relate to one misdemeanor, and I would be at criminal history category number two had the probation office not unilaterally decided to petition for revocation of probation, even though the defendant is awaiting trial on these federal criminal charges that were the ground for the revocation, and that is, the defense counsel says, unusual. So what would you say as the prosecutor? Judge, that's wrong because X. What would X be? I would question, number one, whether it is unusual. I don't know that there's been proof of that. It's, in my experience, it's not unusual for a court to go ahead and do a revocation. I believe this was a state prosecutor, state misdemeanor. It's not unusual for the state to go ahead and revoke. Particularly here where they had four and a half years to think about it, because he was in jail, right? Right. Four and a half years before. He was. He was. So it's not like, you know, this happened one hour after the previous event. I mean, there was correct time for this to evolve. Correct, and I would also have argued if what the court laid out had been the case, that the guidelines specify that this is what happens. You have a prior conviction. You commit another offense, in this case a murder, while you're on probation until these recent guideline amendments. The sentencing commission felt that there was a reason to pop two extra points on there for committing that offense while they were under probation for another sentence. Because the court had done studies showing that people who had that sort of criminal history had a better chance of re-offending than folks who did not. Again, I would urge the court to consider that after November that won't matter. But I believe that should the court not desire to get into all of that, the court could decide this case on whether or not this impact, whether or not this alleged error would have impacted the sentence here. It's not a case where the court, as a matter of course, just sentenced within the guideline range or even on the low end of the guideline range. Here the sentence was not driven by the criminal history, wasn't driven by the guideline range. The court departed downward by 26 percent, or I'm sorry, varied downward by 26 percent, fashioning a sentence that would not have been changed whether this point was included in the criminal history or not. For those reasons, we'd ask the court to affirm. Thank you. I'd like to address this point that the guidelines range didn't matter anyway. There's a presumption that an error that may have affected the guidelines range affects the ultimate sentence. That presumption applies even when there's a variance. That's this court's decision in Sabayonimana. The judge here never said the guidelines range didn't matter, never said that the sentence was independent of the guidelines range. In fact, he affirmatively said that he factored the guidelines range into the sentence. So you can't affirm on that basis. The final thing I'd like to say is my colleague over here said, well, maybe this state court to revoke the probation is not that unusual. Even if that's so, the decision to revoke is totally unrelated to the seriousness of Mr. Van Ortwig's criminal history. And that's the key point. A lot of people don't have this happen. The fact that it did happen in Mr. Van Ortwig's case doesn't mean that his criminal history was more serious than if it hadn't happened. For those reasons, I'd ask that you reverse. Thank you, counsel. This matter will be submitted. Thank you again to both counsel for your excellent.